**NOT FOR PUBICATION**

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re:                                        Case No. 20-24259-A-7

NESTOR GEOFFREY D. QUILATES                   AF-4
and MARIA ERMEDLINA A. QUILATES,

       Debtors

**MEMORANDUM**

Debtors Nestor Quilates and Maria Quilates ("Quilates") move under Rule 60(b) to reconsider conversion of their case to Chapter 7. Mot. for Recons. 1:26-2:1, ECF No. 98. Oral argument will not be helpful. LBR 9014-1(h); *Morrow v. Topping*, 437 F.2d 1155, 1156 (9th Cir. 1971). The motion will be denied.

**I.  FACTS**

On September 4, 2020, Quilates filed a Chapter 11 case.

The Clerk of the Court scheduled a status conference for October 19, 2021. Order Re Chapter 11 Status Conference, ECF No. 7. That order provided: "This is notice that the court may, sua sponte, at the status conference, order the case dismissed or converted to chapter 7, or may order the appointment of a chapter 11 trustee." *Id.*

On October 19, 2020, the court held and continued the status conference. The status conference was continued six times.

The Quilates have filed five plans of reorganization; none were confirmed. Plans, ECF Nos. 41, 48, 57, 72, 86. Over the course of this case, the court has provided the debtors with detailed discussions of the impediments to confirmation. Civil minutes, ECF No. 67, 83. A lingering problem has been feasibility. "During the 8 months since the filing of this case, there have been significant variances between the debtors' representations of income and expenses. This suggests to the court that these figures lack reliability for the purposes of planning for the future and plan confirmation." Civ. Minutes para. 1, ECF No. 83.

On August 16, 2021, the Quilates sought approval of their fifth combined disclosure statement and plan. The court denied approval of the disclosure statement because it deemed the plan not feasible, 11 U.S.C. § 1129(a)(11); and (2) Class 2(b) (general unsecured creditors)

were improperly classed as unimpaired, 11 U.S.C. § 1124. Civ. Minutes, ECF No. 103.

At the continued status conference, also on August 16, 2021, the court converted this case to Chapter 7 finding: (1) cause, i.e., failure to confirm a plan within one year of the filing of the petition and after five unsuccessful efforts, 11 U.S.C. § 1112(b)(1),(4); (2) the absence of any of any of the safe harbor provisions, 11 U.S.C. § 1112(b)(2); and (3) that the best interests of creditors and the estate favored conversion, 11 U.S.C. § 1112(b)(1) ("cash" $26,136, Plan p. 13, ECF No. 86); § 1115(a)(2) (earnings from services performed is property of the estate).

**II. PROCEDURE**

Quilates ask this court to reconsider its order converting the case to Chapter 7. They contend that the court: (1) incorrectly calculated their income in that Mr. Quilates is paid every two weeks, rather than monthly; and (2) the impairment error for Class 2(b) was "small," such that they should have been allowed to amend their plan. Mot. 3:25-4:2, ECF No. 98.

**III. JURSIDICTION**

This court has jurisdiction. 28 U.S.C. § 1334(a)-(b); *see also* General Order No. 182 of the Eastern District of California. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A),(L),(O).

**IV. DISCUSSION**

Rule 60(b) authorizes the court to remedy its own and other party's mistakes. Fed. R. Bankr. P. 60(b)(1), *incorporated by* Fed. R. Bankr. P. 9024.

A disclosure statement must contain "adequate information" to allow creditors and equity holders to make "an informed judgment about

3

the plan." 11 U.S.C. § 1125(a)(1). The debtor bears the burden of proof on the adequacy of the information provided in the disclosure statement. *In re McGee*, No. 09-11860, 2010 WL 9463258, at *1 (Bankr. N.D. Ind. Apr. 21, 2010).

As a rule, when ruling on the adequacy of the information in the disclosure statement, the court should not consider objections to confirmation. *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. MN 1989). But the court may disapprove a disclosure statement where the plan is patently unconfirmable without regard to creditor voting results and based on facts that are not in dispute. *In re American Capital Equip., LLC*, 688 F.3d 145, 154-155 (3rd Cir. 2012).

Here, the court disapproved the disclosure statement because it found the plan patently not feasible. 11 U.S.C. § 1129(a)(11). The court did not err, at least to an extent that changed the outcome.[1] To fund the plan the Quilates' income (wages, self-employment, and rent) must be not less than $10,240.51. That amount is the sum of: (1) living expense for the debtors' household of 6 persons of $8,225.01, Plan Ex. 3 pp. 14-15, ECF No. 86 (all expenses included except "[p]ayroll [t]axes and [r]elated [w]ithholdings" for Mr. Quilates); (2) Mrs. Quilates' self-employment tax of $480 (15%, presumably social security only), *Id.* at p. 14; and (3) plan payments of $1,535.50, *Id.* at p. 15.

Over the life of this case the debtors have reported their

---

[1] Concededly, at the hearing on the disclosure statement that court and debtors' counsel were unclear about the pay period for the debtor. The debtor has augmented and clarified the issue; the court now understands that the pay period involved is, in fact, every two weeks. Quilates Decl., ECF No. 100; Ex. A & B, ECF No. 101. This is made clear by comparing Ex. B 2021 Payroll Schedule, ECF No. 101, with Mr. Quilates' pay advice, dated April 30, 2021 (which shows "pay period 09 21" (which the court reads as the ninth two week pay period in 2021).

projected and their actual income.² It has consistently, almost universally, been less than the amount necessary to fund the debtors' ongoing living expenses, tax burden and plan payment. The Quilates' projections and reports of actual income received are summarized as follows.

| Filing Date | Schedules | Plan | Monthly Operating Report | Citation |
|---|---|---|---|---|
| Sept. 4, 2020 | $8,056 | | | Vol. Pet. p. 35 line 10, ECF No. 1 |
| Oct. 4, 2020 | | | $9,546 | MOR Cash Rec. 4:12, ECF No. 24 |
| Nov. 17, 2020 | | | $3,300 | MOR Cash Rec. 3:12, ECF No. 32 |
| Dec. 15, 2020 | | | $6,026³ | MOR Cash Rec. 4:12, ECF No. 39 |
| Dec. 16, 2020 | | $8,056 | | Plan Ex. 3 p. 13, ECF No. 41 |
| Dec. 27, 2020 | | $8,056 | | Plan Ex. 3, p. 13, ECF No. 48 |
| Jan. 19, 2021 | | | $8,938 | MOR Cash Rec. 4:12, ECF No. 51 |
| Feb. 1, 2021 | | $9,556⁴ | | Plan Ex. 3, p. 14, ECF No. 57 |
| Feb. 18, 2021 | $9,555 | | | Sch. I/J, 5:10, ECF |

---

² For the sake of a true comparison between Schedules I and J, the plan, and the Monthly Operating Reports the court uses Mr. Quilates' net income (after taxes and other withholdings) and Mrs. Quilates' gross (pretax) income. This is consistent with the manner in which the debtors' have calculated income as reported on their Monthly Operating Reports. Where necessary (and possible) the court has adjusted the debtors' representations for Mr. Quilates so that it is net income, rather than gross income. When the court has done so, it has noted the adjustment.

³ The amount reported by the debtors was actually $22,955. But of that amount $16,929 was a "transfer from closed accounts" and is not properly described as income for plan performance purposes.

⁴ In this instance, the plan describes this as "income," but does not differentiate between gross and net income.

| Filing Date | Schedules | Plan | Monthly Operating Report | Citation |
|---|---|---|---|---|
| | | | | No. 60 |
| Feb. 18, 2021 | | | $8,982 | MOR Cash Rec. 4:12, ECF No. 62 |
| Mar. 16, 2021 | | | $9,471 | MOR Cash Rec. § 3(a), ECF No. 65[5] |
| Apr. 1, 2021 | | | $9,471 | MOR Cash Rec. 4:12, ECF No. 71 |
| Apr. 1, 2021 | | $12,125[6] | | Plan Ex. 3 p. 14, ECF No. 72 |
| Apr. 12, 2021 | | | $11,704[7] | MOR Cash Rec. 4:12, ECF No. 75 |
| May 23, 2021 | | | $14,036[8] | MOR Cash Rec. 4:12, ECF No. 80 |
| May 27, 2021 | | $11,131 | | Plan Ex. 3 p. 14, ECF No. 86[9] |
| May 27, 2021 | $11,131 | | | Sch. I/J 5:10, ECF No. 89 |
| June 14, 2021 | | | $8,694[10] | MOR Cash Rec. 4:12, ECF No. 90 |
| July 15, 2021 | | | $6,105[11] | MOR Cash |

---

[5] This Monthly Operating Report is incomplete and does not include the "Cash Receipts" portion of the report and the court has relied on the "Summary of Financial Status." Detail as to how income was calculated was not provided.

[6] In this instance the plan describes this as "income," but does not differentiate between gross and net income.

[7] The amount reported by the debtors was $13,945. But of that amount $2,241 was a "tax refund" and is not properly described as income for plan performance purposes.

[8] The amount the debtors actually reported was $17,786. But of that amount, $3,750 was a "transfer from closed accounts" and is not properly described as income for plan performance purposes.

[9] Unlike previous plans, this plan listed the debtors' "gross employment income." For the sake of a true comparison to the other income calculations provided the court has calculated and listed the debtors' net income by subtracting $15,924.00 less "[p]ayroll [t]axes and [r]elated [w]ithholdings" of $4,793.00.

[10] The amount the debtors actually reported was $9,236. But of that amount, $542 was a "Venmo" transfer and is not properly described as income for plan performance purposes.

[11] The amount the debtors actually reported was $8,005. But of that amount, $1,900 was a "transfer from closed accounts" and is not properly described as

| Filing Date | Schedules | Plan | Monthly Operating Report | Citation |
|---|---|---|---|---|
|  |  |  |  | Rec. 4:12, ECF No. 92. |
| Aug. 12, 2021 |  |  | $10,087 | MOR Cash Rec. p. 2 ¶ 2(b), ECF No. 94 |

The most reliable indicator of the Quilates' net income is their own Monthly Operating Reports. Fed. R. Evid. 801(d)(2) (admission). In only two of the preceding twelve months, April and May 2021, the Quilates' income exceeded the minimum threshold necessary to support the debtors and their household, as well as fund the plan. The average household income is $8,864 per month, which is well below that necessary to fund the plan. In fact, that income is insufficient to cover the debtors' living expenses and tax burden, i.e., $9,305 ($8,225.01, Plan Ex. 3 pp. 14-15, ECF No. 86 (all expenses included except "[p]ayroll [t]axes and [r]elated [w]ithholdings" for Mr. Quilates) and Mrs. Quilates' self-employment tax of $480, *Id.*). Moreover, there is no evidence of a sustained upward income trend.

The next best indicator of the Quilates' income are their projections made in Schedules I and their proposed Chapter 11 plans. Excepting projections for April and May 2021, these projections have also been well below the minimum threshold $10,240.51.

The Quilates' best argument to the contrary is that Mr. Quilates' most recent pay advice, dated April 30, 2021, shows average year-to-date net income for Mr. Quilates of $9,717.67, Ex. A April 30, 2021, pay advice, ECF No. 101;[12] combined with Ms. Quilates' income, $3,200,

---

income for plan performance purposes.

[12] That is calculated based on aggregate gross year-to-date of $42,738.51 and aggregate year-to-date deductions of $4,586.08. Those amount to an average monthly gross income of $10,885.75 per month ($42,738.51 ÷ 17 weeks × 4.33 weeks per month) and payroll taxes/other withholdings of $1,168.08 per month

7

and rent, $1,600, the household net income is $14,517.75. And that amount is more than sufficient to fund the plan. But there are two problems with this evidence. First, these figures are year-to-date as of four months prior to the consideration of the Quilates' fifth Chapter 11 disclosure statement/plan and are stale. That pay advice does not reflect Mr. Quilates' income in May, June, July, and August 2021. Second, and more importantly, these figures are demonstrably inconsistent with debtors' representations as to income in the Monthly Operating Reports, particularly those filed in June, July, and August 2021, which show considerably less income.

**V.    CONCLUSION**

Even considering the Quilates' updated evidence as to income and its calculation, the court finds the that Combined Plan of Reorganization dated May 25, 2021, ECF No. 86, is patently not feasible. As a result, the court did not err in its finding of lack of feasibility and the motion will be denied. The court will issue an order from chambers.

Dated: September 07, 2021

Fredrick E. Clement
United States Bankruptcy Judge

---

($4,586.08 ÷ 17 weeks × 4.33 weeks per month).  $10,885.75 gross wages per month less $1,168.08 = $9,717.67.

8

# Instructions to Clerk of Court

### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked ____, via the U.S. mail.

| **Debtor**(s) | **Attorney for the Debtor**(s) (if any) |
|---|---|
| **Bankruptcy Trustee** (if appointed in the case) | **Office of the U.S. Trustee**<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA  95814 |
| **All Creditors** | |